UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MIGUEL ALDANA/OPEN UNIVERSE LLC, DANIEL BANACHOWSKI/DB INVESTMENTS LLC, THOMAS BECKUM, LAURA BECKUM, TINA BENNETT, BRIAN BOCHICCHIO, BRYAN BORENSTEIN, CHONSY BOUALOY, JAMES ECKFORD IV, RONALD FESTA, ANNA FLOREY, GERARDO V. GARCIA, MARK GIRGUIS, GIAN LUCA GUERRINI, CONOR HEALEY, IMRE JUZA, MURPHY MADDOX/CRISWELL LAW FIRM LLC, LUCIDALVA MOORE, LANCE MORELAND, SHAN PATEL, DANIEL PEDISICH/DALMATIAN VENTURES INC., DAVID PHILIPS, TOMER POLIT, JOSHUA SCHMIDT/JADE TECHNOLOGIES INC., GEORGE SHAPKAROV/DOBAR DEN TRUST, TUDOR STIHARU, ANDREW SU/DOULOS SOFTWARE VENTURES, LLC, SCOT WALKER, LINDA WALLACE/LINEMPIRE LLC, and GREGORY YURISH, | Docket # __8·26-cv-1745-JLB-TGW__  <br><br> <u>Complaint</u> <br> Jury Trial Demanded <br><br><br><br><br> JUN 16 2026 AM11:43 <br> FILED - USDC - FLMD - TPA |
| Plaintiffs, | |
| -against- | |
| ZAN SHAIKH and BRIGHT VISION DISTRIBUTION, LLC, | |
| Defendants. | |

Plaintiffs, Miguel Aldana/Open Universe LLC, Daniel Banachowski/DB Investments LLC, Thomas Beckum, Laura Beckum, Tina Bennett, Brian Bochicchio, Bryan Borenstein, Chonsy Boualoy, James Eckford, Ronald Festa, Anna Florey, Gerardo V. Garcia, Mark Girguis, Gian Luca Guerrini, Conor Healey, Imre Juza, Murphy Maddox/Criswell Law Firm LLC, Lance Moreland, Lucidalva Moore, Shan Patel, Daniel Pedisich/Dalmatian Ventures Inc., David Philips, Tomer Polit, Joshua Schmidt/Jade Technologies Inc., George Shapkarov/Dobar Den Trust, Tudor Stiharu, Andrew Su/Doulos Software Ventures, LLC, Scot Walker, Linda Wallace/LinEmpire LLC, and Gregory Yurish, for their Complaint against Zan Shaikh and Bright



Vision Distribution, LLC (Shaikh and Bright Vision Distribution, LLC referred to collectively herein as "Defendants"), allege as follows:

## SUMMARY

1. Upon information and belief, Zan Shaikh is not licensed to market, sell, or deal in securities. Nonetheless, Zan Shaikh, who, upon information and belief, is the president and sole member of Bright Vision Distribution, LLC ("BVD"), unlawfully offered and sold to the Plaintiffs (each an "Investor" and collectively the "Investors") unregistered investment contracts.

2. In some instances, the investment contracts are represented by a written agreement identified as a Mining Automatic Agreement (collectively the "Mining Automatic Investment Contracts") (Composite Exhibits A-1-16). In other instances, the investment contracts were made orally and through a series of electronic communications. In all cases, the material terms were the same.

3. The material terms of each of the Mining Automatic Investment Contracts are the same. In sum, the Mining Automatic Investment Contracts require each Investor to pay a sum certain, ranging from approximately $25,000 to $200,000.

4. In exchange, BVD agreed that it would obtain equipment designed to "mine" crypto currency (the "Equipment"), which BVD would select in its sole discretion and install at a location exclusively of BVD's choosing.

5. BVD represented that, thereafter, BVD would manage the operation of the Equipment to generate crypto currency.

6. BVD further represented that the Equipment would generate a minimum return of three percent (3%) per month and as much as ten percent (10%) per month for a period of five years.

2

7.     The Mining Automatic Investment Contracts also specify that the Investors are to receive eighty percent (80%) of the profits generated by the Equipment and that BVD would receive twenty percent (20%) of the profits, which would be calculated and paid on a monthly basis.

8.     As set forth in greater detail below and in the accompanying exhibits, in each case, BVD received the agreed upon investment from each of the Investors.

9.     Thereafter, BVD paid money to the Investors in various minimal amounts over varying periods of time but, ultimately, defaulted in making payments to the Investors as required under the Mining Automatic Investment Contracts.

10.     To date, despite the Investors having made numerous demands to BVD for compliance with the terms of the Mining Automatic Investment Contracts, BVD remains in default.

11.     As set forth below and in the accompanying exhibits, Zan Shaikh and BVD failed to provide to the Investors material information regarding the Mining Automatic Investment Contracts, which obscured the substantial risks posed by the investments.

12.     Critically, the Investors never had any ability whatsoever to control the profitability of their investments and, in each case, have at all times been entirely dependent upon the managerial skills of Shaikh and BVD for the success of the enterprise.

13.     Indeed, the Investors have no ability to contribute time or effort toward the success of the enterprise; they have no contractual powers to impact the success of the enterprise; and they do not have any contractual right to information regarding the enterprise.

## STATUTORY VIOLATIONS

14. By engaging in the conduct set forth in this Complaint, Defendants unlawfully offered and sold securities in violation of 15 U.S.C. §§ 77e(a) and 77e(c).

15. Pursuant to 15 U.S.C. § 77l, Defendants are liable for the damages suffered by Plaintiffs as a result of Defendants' conduct set forth herein.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 77v and 28 U.S.C. § 1331.

17. Defendants, directly or indirectly, have made use of the means or instruments of transportation or communication in interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

18. Venue is proper in the Middle District of Florida pursuant to 15 U.S.C. § 77v(a), given that Defendants transact business in this District and/or offered and sold securities in this District.

### The Parties

#### Plaintiffs

19. Miguel Aldana:/Open Universe LLC:

    a. Miguel Aldana is an individual residing in Livington, New Jersey.

    b. Open Universe LLC is a limited liability company organized under the laws of New Jersey with its principal place of business in New Jersey.

20. Daniel Banachowski/DB Investments LLC:

    a. Daniel Banachowski is an individual residing in Chicago, Illinois.

4

b. DB Investments LLC is a limited liability company organized under the laws of Illinois with its principal place of business in Illinois.

21. Thomas Beckum is an individual residing in Dallas, Texas.

22. Laura Beckum is an individual residing in Dallas, Texas.

23. Tina Bennett is an individual residing in Bartonville, Texas.

24. Brian Bochicchio is an individual residing in Oakton, Virginia.

25. Bryan Borenstein is an individual residing in Laguna Niguel, California.

26. Chonsy Boualoy is an individual residing in Groveport, Ohio.

27. James Eckford IV is an individual residing in Ridgeland, Mississippi.

28. Ronald Festa is an individual residing in Lower Burrell, Pennsylvania.

29. Anna Florey is an individual residing in Erie, Colorado.

30. Gerardo V. Garcia is an individual residing in San Bernardino, California.

31. Mark Griguis is an individual residing in Norco, California.

32. Gain Luca Guerrrini is an individual residing in Commack, New York.

33. Conor Healey is an individual residing in Dubai.

34. Imre Juza is an individual residing in Orlando, Florida.

35. Murphy Maddox/Criswell Law Firm LLC:

a. Murphy Maddox is an individual residing in Northwest Reform, Alabama.

b. Criswell Law Firm LLC is a limited liability company organized under the laws of Alabama with its principal place of business in Alabama.

36. Lucidalva Moore is an individual residing in Buckeye, Arizona.

37. Lance Moreland is an individual residing in Cypress, Texas.

38. Shan Patel is an individual residing in Cave Creek, Arizona.

5

39. Daniel Pedisich/Dalmatian Ventures Inc.:

    a. Daniel Pedisich is an individual residing in Lloyd Harbor, New York.

    b. Dalmatian Ventures Inc. is a corporation organized under the laws of New York with its principal place of business in New York.

40. David Philips is an individual residing in Austin, Texas.

41. Tomer Polit is an individual residing in Sugarland, Texas.

42. Joshua Schmidt/Jade Technologies Inc.:

    a. Joshua Schmidt is an individual residing in Saint Cloud, Minnesota.

    b. Jade Technologies is a corporation organized under the laws of Minnesota with its principal place of business in Minnesota.

43. George Shapkarov/Dobar Den Trust:

    a. George Shapkarov is an individual residing in Riverwoods, Illinois.

    b. The Dobar Den Trust is a trust formed under the laws of the State of Illinois.

44. Tudor Stiharu is an individual residing in Minneapolis, Minnesota.

45. Andrew Su/Doulos Software Ventures LLC:

    a. Andrew Su is an individual residing in Anaheim, California.

    b. Doulos Software Ventures LLC is a limited liability company organized under the laws of Wyoming with its principal place of business in Cheyenne, Wyoming.

46. Scot Walker is an individual residing in Island Falls, Maine.

47. Linda Wallace/LinEmpire LLC:

    a. Linda Wallace is an individual residing in Weston, Florida.

    b.  LinEmpire LLC is a limited liability company organized under the laws of the Florida with its principal place of business in Florida.

48.    Gregory Yurish is an individual residing in Lake Butler, Florida.

**Defendants**

49.    Bright Vision Distribution, LLC is a limited liability company organized under the laws of the State of Massachusetts with an address of 11 Apex Drive, Suite 300A, Unit 249, Marlborough, Massachusetts 01752.

50.    Upon information and belief, Zan Shaikh is an individual with residences in Dade County, Florida and Marlborough, Massachusetts.

<strong><u>Statutory Framework</u></strong>

51.    The offer and sale of securities is regulated by law under 15 U.S.C. § 77(v)(a) (the "Securities Act").

52.    The Securities Act is intended to ensure full and fair disclosure providing the investment public with sufficient, accurate information to allow prospective investors to make informed decisions.

53.    Under the Securities Act, the issuer of a security and any control person must register offers and sales of securities with the Securities and Exchange Commission (the "SEC") prior to offering any security for sale to the public.

54.    Registration statements relating to an offering of securities provide prospective investors with material information about the issuer and the offering, including financial and managerial information, how the issuer will use the offering proceeds, and the risks and trends that affect the enterprise and an investment in its securities.

7

55.    After an issuer registers an offer and sale of its securities under the Securities Act, the issuer is required to make periodic public disclosures, including annual, quarterly, and current reports that provide disclosures regarding the issuer's business, management issues, significant events, and financial information.

56.    Under the Securities Act, the definition a "security" is broad and includes any instrument that might be sold as an investment.

57.    Among those investments that qualifies as a "security" is an "investment contract."

58.    A moneymaking scheme qualifies as an investment contract if it involves the investment of money in an enterprise with profits to come solely from the efforts of others.

### Facts Common to All Causes of Action

## A. The Mining Automatic Investment Contracts

59.    In or about 2024, Shaikh began advertising an investment opportunity identified as Mining Automatic.

60.    According to Shaikh, BVD, operating under the name Mining Automatic, would purchase and deploy computers intended to "mine" cryptocurrency.

61.    To bolster the credibility of the operation, Shaikh and BVD employed a team of customer service representatives to communicate with investors.

62.    The terms of each of the Mining Automatic Investment Contracts are materially identical.

63.    Under each agreement, "BVD agrees to install cryptocurrency mining equipment ("Equipment") at its locations . . . ." Composite Exhibits A-1-16, Mining Automatic Investment Contracts at 1.

8

64. In exchange, the investor agrees to pay to BVD a sum of money for the generation of crypto mining services. Composite Exhibits A-1-16, Mining Automatic Investment Contracts at 1.

65. Under the agreements, BVD promised that a "minimum 3% monthly return will be generated on [the sum invested] ("the Generation Amount") and up to 10%+ monthly return for a set term of five years." Exhibits A-1-16, Mining Automatic Investment Contract at 1.

66. The agreements further specify that the investor agrees that BVD shall receive 20 percent of the profits generated from the investment and that the investor will receive 80 percent. Composite Exhibits A-1-16, Mining Automatic Investment Contract at 1.

67. Notably, the agreement mandates that "BVD will select the type, quantity and supplier of each item of Equipment and will choose the location of the Equipment installation." Exhibits A-1-16, Mining Automatic Investment Contracts at 2.

68. Critically, the agreement states further as follows:

> "BVD acknowledges that Client has not participated and will not participate in any way in BVD's selection of the Equipment, the choice of location where the equipment will be installed, or of the supplier of the Equipment."

Exhibits A-1-13, Mining Automatic Investment Contracts at 2-3.

69. In this regard, the agreements also dictate that BVD has sole discretion with respect to the operation, use, location, maintenance, and improvements of the Equipment. Exhibits A-1-16, Mining Automatic Investment Contracts at 4.

70. BVD further asserts sole dominion and control over the Equipment:

> "The Equipment is, and shall remain, the property of BVD, and Client shall have no right, title or interest therein or thereto except as expressly set forth in this Agreement."

Exhibits A-1-16, Mining Automatic Investment Contracts at 4.

9

71. Under the agreements, BVD also agrees that "BVD shall be obligated to manage the operation of all mining equipment and infrastructure." Exhibits A-1-16, Mining Automatic Investment Contracts at 3.

72. Notably, set out in all capital letters in bold type, the agreements make clear that the investors' obligation to pay are absolute. Exhibits A-1-16, Mining Automatic Investment Contract at 3.

73. Under the terms of the Mining Automatic Investment Contracts, Investors do not have any ability to impact the profitability of their investments, either individually or collectively.

74. The profitability of Investors' investments is entirely dependent upon the efforts and managerial skills of others, to wit, BVD and Shaikh.

75. The Mining Automatic Investment Contracts do not provide Investors with any right to audit or examine BVD's books and records or even the right to know where the equipment is located.

76. Investors do not have the right to inspect BVD's formation documents, meeting minutes, or tax returns.

77. Based upon the foregoing facts and additional information contained in the exhibits annexed to this Complaint, each Mining Automatic agreement constitutes an investment contract, which, under the Securities Act, is a security that was required to be registered prior to being offered for sale to the public.

**B. Shaikh and BVD Failed to Register the Mining Automatic Investment Contracts.**

78. Upon information and belief, Shaikh is the sole member of BVD.

10

79.     Shaikh controls the operation of BVD and is responsible for all material decisions with respect to the Mining Automatic Investment Contracts.

80.     Upon information and belief, neither BVD nor Shaikh is licensed to market, sell, or deal in securities.

81.     Shaikh and BVD failed to register the Mining Automatic Investment Contracts with the SEC, as required under the Securities Act.

82.     Accordingly, Shaikh and BVD deprived Investors of the right to full and fair disclosure of sufficient, accurate information to allow them to make informed decisions.

83.     Shaikh and BVD similarly failed to make periodic public disclosures, including annual, quarterly, and current reports that provide disclosures regarding the issuer's business, management issues, significant events, and financial information.

84.     Investors who bought Mining Automatic Investment Contracts have not received any information about BVD's financial history, audited financial statements, management discussion and analysis of its financial condition and results of operations, and ability to generate profits, or other factors relevant to in considering whether to invest in BVD.

85.     Investors have been deprived of information about how Shaikh is being compensated

86.     Accordingly, Shaikh and BVD are in violation of the Securities Act in that they are unlicensed and have publicly offered the sale of unregistered securities.

**C. Shaikh and BVD Utilized Instruments of Communication in Interstate Commerce to Offer the Mining Automatic Investment Contracts for Sale.**

87.     Shaikh and BVD offered the Mining Automatic Investment Contracts for sale to the public via instruments of communication in interstate commerce, to wit, social media advertisements and telephone communications.

88.     Shaikh and BVD utilized emails and sales pitches made publicly available through the internet and social media.

89.     Shaikh and BVD utilized the advertisements and telephone communications for the Mining Automatic Investment Contracts to employ a scheme to defraud and deceive Investors.

90.     Shaikh and BVD utilized the advertisements and telephone communications for the Mining Automatic Investment Contracts to obtain money by means of untrue statements of material fact and the omission of material facts.

91.     Shaikh and BVD utilized the advertisements and telephone communications for the Mining Automatic Investment Contracts to engage in transactions and a course of business that operated to defraud and deceive the Investors.

92.     As noted above, Shaikh and BVD promised that a "minimum 3% monthly return [would] be generated on [the sum invested] ("the Generation Amount") and up to 10%+ monthly return for a set term of five years." Exhibits A-1-16, Mining Automatic Investment Contracts at 1.

93.     This representation was false and, upon information and belief, Shaikh and BVD knew it to be false when made.

94.     Shaikh and BVD led Investors to expect that Shaikh and BVD would drive the success of the investment. On August 24, 2025, advised the Investors:

> "It's okay to be skeptical; I totally get that, but here's the thing: I'm running a platform where my mission is simple – to make every single one of my followers a millionaire. That's the goal."

12

95.     Making a direct representation that BVD operates in Florida and that BVD is offering an investment opportunity that would yield results based upon Shaikh's and his team's experience and expertise, Shaikh made the following offering pitch on August 24, 2025:

> "Normally, I don't even respond to message requests but you look like a cool guy, so I made an exception. I thought it'd be nice to print these papers together, here's how this works: I've got a private server for **my active mining investors. These are people making strong returns weekly and monthly**. We're not talking hype, bro, **we're miners and have been doing this for a couple of years now**. We own a software company in Massachusetts. **We've got other mining locations here in Florida**, Arizona, and some other states. **When you invest**, you'll actually see it live, your money at work, your machine running in real time, right on your dashboard. So, I'll send you a link to review the site yourself. Take your time, go through it, and then **let me know your investment plan**. If you want to move forward, we'll get you on board into the next step. I'll be waiting for your response. (emphasis supplied).

96.     Shaikh and BVD touted the ability of its team to succeed in its promised efforts.

97.     Upon an Investor signing a Mining Automatic Investment Contract, Shaikh made bold promises of returns:

> Get ready for an incredible mining journey! Now that your payment is confirmed, our team is already working on procuring the miners for you. Your setup will be live and producing within 30-60 days.
>
> Thank you for choosing Mining Automatic. We're confident that together, we'll achieve remarkable success and maximize your mining potential.

Exhibit B, Mining Automatic Message to Investor, dated April 8, 2024.

98.     Shaikh and BVD made repeated and persistent public statements regarding their efforts to generate profits from the "mining operations."

99.     Based upon Shaikh's and BVD's representations and actions, Investors had a reasonable expectation of profiting from Shaikh's and BVD's efforts utilize the "mining equipment" to bring value to the common enterprise.

13

**D. The Investors Invested in a Common Enterprise**.

100. At all relevant times, the Mining Automatic Investment Contracts constituted "investment contracts" and, therefore, were securities subject to registration requirement under federal securities laws.

101. Shaikh and BVD offered and sold the Mining Automatic Investment Contracts as an investment into a common enterprise that included Shaikh's and BVD's promises to undertake significant entrepreneurial and managerial efforts.

102. Given the terms of the Mining Automatic Investment Contracts, including that Shaikh and BVD controlled which equipment it would purchase, where it would be located, and how it would be operated, circumstances dictated that the Investors were dependent upon Shaikh's and BVD's efforts for the success or failure of their investments.

103. Shaikh and BVD repeated promoted their "team" and the experience of the "team" of "miners" to facilitate the success of the investment.

104. Based upon Shaikh's and BVD's statements, Investors understood that the "equipment" was being housed in "mining" facilities operated by "teams" of "miners."

**E. The Mining Automatic Agreements with the Plaintiff-Investors**.

105. Daniel Banachowski/DB Investments LLC ("DB Investments"):

    a. On October 20, 2022, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to DB Investments.

    b. In accordance with the Mining Automatic Investment Contract, DB Investments paid $65,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

    c. BVD failed to make any payments to DB Investments.

14

    d. DB Investments suffered damages in an amount to be determined at trial but that is not less than $65,000, exclusive of interest, costs, and attorneys' fees.

106. Chonsy Boualoy:

    a. On June 23, 2023, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Chonsy Boualoy.

    b. In accordance with the Mining Automatic Investment Contract, Chonsy Boualoy paid $60,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

    c. During the period from March 6, 2024 to February 2, 2025, BVD paid 0.70109922 Bitcoin to Chonsy Boualoy.

107. Linda Wallace/LinEmpire LLC ("LinEmpire"):

    a. On October 15, 2023, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to LinEmpire. Exhibit A-11, LinEmpire Mining Automatic Investment Contract #1.

    b. In accordance with the Mining Automatic Investment Contract, LinEmpire paid $150,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

    c. On December 5, 2023, Shaikh, on behalf of BVD, sold a second Mining Automatic Investment Contract to LinEmpire. Exhibit A-12, LinEmpire Mining Automatic Investment Contract #2.

    d. In accordance with the second Mining Automatic Investment Contract, LinEmpire paid $75,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

e.   During the period from April 9, 2024 to July 16, 2024, BVD paid a total of $40,941.00 to LinEmpire.

f.   LinEmpire suffered damages in an amount to be determined at trial but that is not less than $164,059, exclusive of interest, costs, and attorneys' fees.

108.   Mark Girguis:

a.   On January 25, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Mark Girguis.

b.   In accordance with the Mining Automatic Investment Contract, Mark Girguis paid $50,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

c.   During the period from January 31, 2024 to November 1, 2024, BVD paid a total of $1,401.15 to Mark Girguis.

d.   Mark Girguis suffered damages in an amount to be determined at trial but that is not less than $48,598.85, exclusive of interest, costs, and attorneys' fees.

109.   Bryan Borenstein:

a.   On February 5, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Bryan Borenstein. Exhibit A-2, Bryan Borenstein Mining Automatic Investment Contract.

b.   In accordance with the Mining Automatic Investment Contract, Bryan Borenstein paid $100,000.00 to BVD in exchange for a minimum promised return of 100,000 "megahashes" per second for a of period five years.  Exhibit A-2, Bryan Borenstein Mining Automatic Investment Contract.

c.   BVD failed to make any payments to Bryan Borenstein.

16

d. Bryan Borenstein suffered damages in an amount to be determined at trial but that is not less than $100,000, exclusive of interest, costs, and attorneys' fees.

110. Ronald Festa:

a. On February 23, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Ronald Festa.

b. In accordance with the Mining Automatic Investment Contract, Ronald Festa paid $50,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

c. BVD failed to make any payments to Ronald Festa.

d. Ronald Festa suffered damages in an amount to be determined at trial but that is not less than $50,000, exclusive of interest, costs, and attorneys' fees.

111. Scot Walker:

a. On February 28, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Scot Walker. Exhibit A-10, Scot Walker Mining Automatic Investment Contract.

b. In accordance with the Mining Automatic Investment Contract, Scot Walker paid $100,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

c. BVD paid a total of $11,157.22 to Scot Walker.

d. Scot Walker suffered damages in an amount to be determined at trial but that is not less than $88,842.78, exclusive of interest, costs, and attorneys' fees.

112. Dobar Den Trust for the benefit of George Shapkarov ("Shapkarov Trust"):

   a. On March 27, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to the Shapkarov Trust. Exhibit A-8, Shapkarov Trust Mining Automatic Investment Contract.

   b. In accordance with the Mining Automatic Investment Contract, the Shapkarov Trust paid $25,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

   c. BVD failed to make any payments to the Shapkarov Trust.

   d. The Shapkarov Trust suffered damages in an amount to be determined at trial but that is not less than $25,000, exclusive of interest, costs, and attorneys' fees.

113. Tomer Polit:

   a. On April 1, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Tomer Polit. Exhibit A-6, Tomer Polit Mining Automatic Investment Contract.

   b. In accordance with the Mining Automatic Investment Contract, Tomer Polit paid $50,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

   c. BVD paid a total of $1,823.33 to Tomer Polit.

   d. Tomer Polit suffered damages in an amount to be determined at trial but that is not less than $48,176.67, exclusive of interest, costs, and attorneys' fees.

114. Joshua Schmidt/Jade Technologies Inc. ("Jade Technologies"):

   a. On April 1, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Jade Technologies. Exhibit A-7, Jade Technologies Mining Automatic Investment Contract.

   b. In accordance with the Mining Automatic Investment Contract, Jade Technologies paid $87,500.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

   c. During the period from October 18, 2024 to January 31, 2025, BVD paid a total of $9,362.50 to Jade Technologies.

   d. Jade Technologies suffered damages in an amount to be determined at trial but that is not less than $78,137.50, exclusive of interest, costs, and attorneys' fees.

115. Thomas and Laura Beckum:

   a. On April 16, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Thomas and Laura Beckum.

   b. In accordance with the Mining Automatic Investment Contract, Thomas and Laura Beckum paid $400,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

   c. During the period from August 13, 2024 to February 21, 2025, BVD paid a total of $1.25 to Thomas and Laura Beckum.

   d. Thomas and Laura Beckum suffered damages in an amount to be determined at trial but that is not less than $399,998.75, exclusive of interest, costs, and attorneys' fees.

116. Gerardo V. Garcia:

    a. On April 19, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Gerardo V. Garcia.

    b. In accordance with the Mining Automatic Investment Contract, Gerardo V. Garcia paid $50,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

    c. During the period from August 13, 2024 to February 21, 2025, BVD paid a total of $1,579.69 to Gerardo V. Garcia.

    d. Gerardo V. Garcia suffered damages in an amount to be determined at trial but that is not less than $48,420.31, exclusive of interest, costs, and attorneys' fees.

117. Daniel Pedisich/Dalmatian Ventures Inc. ("Dalmatian Ventures"):

    a. On April 30, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Dalmatian Ventures. Exhibit A-15, Dalmatian Ventures Mining Automatic Investment Contract.

    b. In accordance with the Mining Automatic Investment Contract, Dalmatian Ventures paid $300,000.00 to BVD in exchange for a minimum promised return of three percent per month on $332,000.00 for a period of five years.

    c. During the period from June 3, 2024 to July 30, 2024, BVD paid a total of $55,500.00 to Dalmatian Ventures.

    d. Dalmatian Ventures suffered damages in an amount to be determined at trial but that is not less than $242,500, exclusive of interest, costs, and attorneys' fees.

118. David Phillips:

    a. On May 10, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to David Phillips. Exhibit A-5, David Phillips Mining Automatic Investment Contract.

    b. In accordance with the Mining Automatic Investment Contract, David Phillips paid $100,000.00 to BVD in exchange for a minimum promised return of three percent per month on $110,000.00 for a period of five years.

    c. BVD failed to make any payments to David Phillips.

    d. David Phillips suffered damages in an amount to be determined at trial but that is not less than $100,000, exclusive of interest, costs, and attorneys' fees.

119. Shan Patel:

    a. On May 13, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Shan Patel. Exhibit A-4, Shan Patel Mining Automatic Investment Contract.

    b. In accordance with the Mining Automatic Investment Contract, Shan Patel paid $25,000.00 to BVD in exchange for a minimum promised return of 25,000 "megahashes" per second for a period of five years.

    c. During the period from August 29, 2024 to February 21, 2024, BVD paid a total of $1,718.08 to Shan Patel.

    d. Shan Patel suffered damages in an amount to be determined at trial but that is not less than $98,281.92, interest, costs, and attorneys' fees.

120. Lance Moreland:

    a. On May 22, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Lance Mooreland.

    b. In accordance with the Mining Automatic Investment Contract, Lance Mooreland paid $50,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

    c. BVD paid a total of $1,700.00 to Lanced Mooreland.

    d. Lance Moreland suffered damages in an amount to be determined at trial but that is not less than $48,300, exclusive of interest, costs, and attorneys' fees.

121. Gregory Yurish:

    a. On May 30, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Gregory Yurish. Exhibit A-13, Gregory Yurish Mining Automatic Investment Contract.

    b. In accordance with the Mining Automatic Investment Contract, Gregory Yurish paid $100,000.00 to BVD in exchange for a minimum promised return of three percent per month on $110,000 for a period of five years.

    c. During the period from August 13, 2024 to February 21, 2025, BVD paid a total of $9,183.94 to Gregory Yurish.

    d. Gregory Yurish suffered damages in an amount to be determined at trial but that is not less than $90,816.06, exclusive of interest, costs, attorneys' fees.

122. Anna Florey:

    a. In June 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Anna Florey.

    b.  In accordance with the Mining Automatic Investment Contract, Ann Florey paid $50,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

    c.  BVD failed to make any payments to Anna Florey.

    d.  Anna Florey suffered damages in an amount to be determined at trial but that is not less than $50,000, exclusive of interest, costs, and attorneys' fees.

123.  Imre Juza:

    a.  On June 4, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Imre Juza.  Exhibit A -16, Imre Juza Mining Automatic Investment Contract.

    b.  In accordance with the Mining Automatic Investment Contract, Juza paid $200,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

    c.  During the period from September 8, 2024 to March 9, 2025, BVD paid a total of $12,516.67 to Juza.

    d.  Imre Juza suffered damages in an amount to be determined at trial but that is not less than $187,483.33, exclusive of interest, costs, and attorneys' fees.

124.  Tina Bennett:

    a.  On June 11, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Tina Bennett.

    b.  In accordance with the Mining Automatic Investment Contract, Bennett paid $25,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

    c.   BVD failed to make any payments to Tina Bennett.

    d.   Tina Bennett suffered damages in an amount to be determined at trial but that is not less than $25,000, exclusive of interest, costs, and attorneys' fees.

125.    Miguel Aldana/Open Universe LLC ("Open Universe"):

    a.   On June 12, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Open Universe.

    b.   In accordance with the Mining Automatic Investment Contract, Open Universe paid $50,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

    c.   During the period from September 20, 2024 to December 5, 2024, BVD paid a total of $4,160.00 to Open Universe.

    d.   Open Universe suffered damages in an amount to be determined at trial but that is not less than $45,840, exclusive of interest, costs, and attorneys' fees.

126.    Gian Luca Guerrini:

    a.   On June 12, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Gian Luca Guerrini.

    b.   In accordance with the Mining Automatic Investment Contract, Gian Luca Guerrini paid $20,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

    c.   BVD failed to make any payments to Gian Luca Guerrini.

    d.   Gian Luca Guerrini suffered damages in an amount to be determined at trial but that is not less than $20,000, exclusive of interest, costs, and attorneys' fees.

127. Andrew Su/Doulos Software Ventures, LLC ("Doulos Software Ventures"):

   a. On June 16, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Doulos Software Ventures. Exhibit A-9, Doulos Software Ventures Mining Automatic Investment Contract.

   b. In accordance with the Mining Automatic Investment Contract, Doulos Software Ventures paid $75,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

   c. During the period from June 21, 2025 to August 27, 2024, BVD paid a total of $3,482.39 to Doulos Software Ventures.

   d. Doulos Software Ventures suffered damages in an amount to be determined at trial but that is not less than $71,517.61, exclusive of interest, costs, and attorneys' fees.

128. Brian Bochicchio:

   a. On June 19, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Brian Bochicchio. Exhibit A-1, Brian Bochicchio Mining Automatic Investment Contract.

   b. In accordance with the Mining Automatic Investment Contract, Brian Bochicchio paid $100,000.00 to BVD in exchange for a minimum promised return of three percent per month on $110,000.00 for a period of five years.

   c. BVD paid a total of $1,800.00 to Brian Bochicchio.

   d. Brian Bochicchio suffered damages in an amount to be determined at trial but that is not less than $98,200, exclusive of interest, costs, and attorneys' fees.

129.  Conor Healey:

    a.  On June 19, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Conor Healey.

    b.  In accordance with the Mining Automatic Investment Contract, Conor Healey paid $170,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

    c.  During the period from August 2024 to January 2025, BVD paid a total of $18,020.00 to Conor Healey.

    d.  Conor Healey suffered damages in an amount to be determined at trial but that is not less than $151,980, exclusive of interest, costs, and attorneys' fees.

130.  James W. Eckford IV:

    a.  On August 2, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to James W. Eckford IV.  Exhibit A-14, James W. Eckford IV Mining Automatic Investment Contract.[1]

    b.  In accordance with the Mining Automatic Investment Contract, James W. Eckford IV paid $100,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

    c.  During the period from October 17, 2024 to February 28, 2025, BVD paid a total of $3,258.33 to James W. Eckford IV.

    d.  James W. Eckford IV suffered damages in an amount to be determined at trial but that is not less than $96,741.67, exclusive of interest, costs, and attorneys' fees.

---

[1] Although the exhibited contract is unexecuted, upon information and belief, the Defendants are in possession of the executed contract.

131. Murphy Maddox/Criswell Law Firm LLC ("Criswell Law Firm"):

    a. On September 12, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Criswell Law Firm. Exhibit A-3, Criswell Law Firm Mining Automatic Investment Contract.

    b. In accordance with the Mining Automatic Investment Contract, Criswell Law Firm paid $100,000.00 to BVD in exchange for a minimum promised return of three percent per month on $105,000.00 for a period of five years.

    c. During the period from January 14, 2025 to February 21, 2025, BVD paid a total of $6,355.00 to Criswell Law Firm.

    d. Criswell Law Firm suffered damages in an amount to be determined at trial but that is not less than $93,645, exclusive of interest, costs, and attorneys' fees.

132. Lucidalva Moore:

    a. On July 25, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Lucidalva Moore.

    b. In accordance with the Mining Automatic Investment Contract, Lucidalva Moore paid $50,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

    c. During the period from November 15, 2024 to February 22, 2025, BVD paid a total of $361.15 to Lucidalva Moore.

    d. Lucidalva Moore suffered damages in an amount to be determined at trial but that is not less than $46,638.85, exclusive of interest, costs, and attorneys' fees.

27

133. Tudor Stiharu:

    a. On November 9, 2024, Shaikh, on behalf of BVD, sold a Mining Automatic Investment Contract to Tudor Stiharu.

    b. In accordance with the Mining Automatic Investment Contract, Tudor Stiharu paid $50,000.00 to BVD in exchange for a minimum promised return of three percent per month for a period of five years.

    c. BVD failed to make any payments to Tudor Stiharu.

    d. Tudor Stiharu suffered damages in an amount to be determined at trial but that is not less than $50,000, exclusive of interest, costs, and attorneys' fees.

**First Cause of Action**

Unregistered Offer and Sale of Securities
Sections 5 and 12(a)(1) of the Securities Act
(BVD)

134. Plaintiffs reallege the allegations above.

135. Section 5(a) of the Securities Act states as follows: "Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale." 15 U.S.C. § 77e(a).

136. Section 5(c) of the Securities Act states as follows: "It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has

been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title." *Id.* § 77e(c).

137.    When issued, the Mining Automatic Investment Contracts are securities within the meaning of Section 2(a)(1) of the Securities Act. *Id.* § 77b(a)(1). BVD promoted, solicited or sold the Mining Automatic Investment Contracts to Plaintiffs. BVD thus directly or indirectly made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale. No registration statements have been filed with the SEC or have been in effect with respect to any of the offerings alleged herein.

138.    Section 12(a)(1) of the Securities Act provides in relevant part as follows: "Any person who offers or sells a security in violation of section 77e of this title . . . shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." *Id.* § 77l(a)(1).

139.    Accordingly, BVD has violated Sections 5(a), 5(c), and 12(a)(1) of the Securities Act, *id.* §§ 77e(a), 77e(c), and 77l(a)(1).

140.    Plaintiffs seek rescissory and/or compensatory damages with respect to purchases of Mining Automatic Investment Contracts. *Id.* § 77m.

29

## Second Cause of Action
Unregistered Broker and Dealer
Sections 15(a)(1) and 29(b) of the Exchange Act
(BVD)

141.     Plaintiffs reallege the allegations above.

142.     In relevant part, with respect to a broker or dealer who is engaged in interstate commerce, section 15(a)(1) of the Exchange Act makes it unlawful "for any broker or dealer . . . to make use of . . . any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance with subsection (b) of this section." 15 U.S.C. § 78o(a)(1).

143.     As a broker-dealer engaged in interstate commerce, and without being registered in accordance with subsection (b) of section 15 of the Exchange Act, throughout the period alleged, BVD has made use of means and instrumentalities of interstate commerce to effect transactions in, and to induce or attempt to induce the purchase of, securities.

144.     A "dealer" includes an entity "engaged in the business of buying and selling securities . . . for such person's own account," insofar as such transactions are part of that person's "regular business." BVD has operated as a dealer during the alleged period by holding itself out as willing to sell securities on a continuous basis, by having regular customers, by having a regular turnover inventory of securities, and by then selling securities to investors for profit immediately or at a later time after being held in inventory.

145.     In the course of operating as an unregistered broker-dealer, BVD has entered into contracts with the Investors pursuant to which the Investors purchased securities through BVD. The parties to these contracts thus reached an agreement whereby and pursuant to which BVD was operating in violation of section 15(a)(1) of the Exchange Act.

146.     The foregoing contracts were made in violation of section 5 of the Exchange

Act, and their performance involves the violation of section 5, and the continuation of a practice in violation of section 5, because BVD entered into them for the purpose of operating, and as operating, as an unlicensed Broker-Dealer in violation of section 5; and because the parties to the contracts reached agreements whereby and pursuant to which BVD would be and was operating in violation of section 5.

147.     Section 29(b) of the Exchange Act provides in relevant part that "[e]very contract made in violation of any provision of this chapter . . . and every contract . . . the performance of which involves the violations of, or the continuance of any relationship or practice in violation of, any provision of this chapter . . . shall be void . . . as regards the rights of any person who, in violation of any such provision, . . . shall have made or engaged in the performance of such contract." *Id*. § 78cc.

148.     Section 29(b) affords Plaintiffs the right, which they hereby pursue, to void their purchase agreements with BVD and to recover rescissory and/or compensatory damages.

149.     Plaintiffs seek to void contracts and recover damages with respect to purchases of the Mining Automatic Investment Contracts. *Id*. § 78cc(b).

**Third Cause of Action**
Control Person Liability for Acting as an
Unregistered Broker and Dealer in Violation of
Sections 15(a)(1) and 29(b) of the Exchange Act
(Zan Shaikh)

150.     Plaintiffs reallege the allegations above.

151.     This Count is asserted against Zan Shaikh for violations of Section 20 of the Exchange Act, 15 U.S.C. § 77o.

152.     Shaikh, by virtue of his office, stock ownership, agency, agreements or understandings, and specific acts, at the time of the wrongs alleged herein, and as set forth herein,

31

had the power and authority to direct the management and activities of BVD and its employees, and to cause BVD to engage in the wrongful conduct complained of herein. Shaikh had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

153.    Shaikh had the power to direct or cause the direction of the management and policies of BVD.

154.    Shaikh had sufficient influence to have prevented BVD from effecting transactions of unregistered securities.

155.    Shaikh participated in, and/or aided and abetted, BVD's offer of unregistered securities in that he knowingly or recklessly provided substantial assistance to BVD in the offer and sale of unregistered securities.

156.    By virtue of the conduct alleged herein, Shaikh is liable for the wrongful conduct complained of herein and is liable to Plaintiffs for rescission and/or damages suffered.

### Fourth Cause of Action
Control Person Liability for Violations
of Section 20 of the Exchange Act
(Zan Shaikh)

157.    Plaintiffs reallege the allegations above.

158.    This Count is asserted against Zan Shaikh for violations of Section 20 of the Exchange Act, 15 U.S.C. § 78t.

159.    Shaikh, by virtue of his office, stock ownership, agency, agreements or understandings, and specific acts, at the time of the wrongs alleged herein, and as set forth herein, had the power and authority to direct the management and activities of BVD and its employees, and to cause BVD to engage in the wrongful conduct complained of herein. Shaikh had and exercised the power and influence to cause the unlawful sales of securities by an unregistered

32

Broker-Dealer as described herein.

160. Shaikh had the power to direct or cause the direction of the management and policies of BVD.

161. Shaikh had sufficient influence to have prevented BVD from acting as an unregistered Broker-Dealer.

162. Shaikh participated in, and/or aided and abetted, BVD's conduct as an unregistered Broker-Dealer in that he knowingly or recklessly provided substantial assistance to BVD in its conduct as an unregistered Broker-Dealer.

163. By virtue of the conduct alleged herein, Shaikh is liable for the wrongful conduct complained of herein and is liable to Plaintiffs for rescission and/or damages suffered.

## Requested Relief

164. Plaintiffs request relief as follows:

    a. That the Court enter an order declaring that Defendants' actions, as set forth in this Complaint, violate the federal laws set forth above.

    b. That the Court award Plaintiffs damages in an amount to be determined at trial.

    c. That the Court issue appropriate equitable and any other relief against Defendants to which Plaintiffs are entitled, including a declaration that the agreements between each Plaintiff and BVD are void.

    d. That the Court award Plaintiffs pre- and post-judgment interest (including pursuant to statutory rates of interest set under State law).

    e. That the Court award Plaintiffs their reasonable attorneys' fees and costs of suit.

33

f.  That the Court award any and all other such relief as the Court may deem just

and proper under the circumstances.

**Demand for Jury Trial**

165.  Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs respectfully

demand a trial by jury for all claims.

Dated:    Tampa, Florida
          June __, 2026

                        *Michael Gonzalez*_____
                        Michael Gonzalez, Esq.
                        Attorney for Plaintiffs
                        Florida Bar Number: 0066826
                        Gonzalez Law Group
                        Ashley Plaza
                        1000 N. Ashley Dr., Suite 520
                        Tampa, FL  33602
                        Telephone: (813) 282-7800
                        Fax: (813) 282-7806
                        E-Mail: michael@michaelgonzalezlaw.com
                        Secondary E-Mail:
                        paralegal@michaelgonzalezlaw.com